# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.:12-CV-24174-Williams**

JUAN JOSE CASTILLO BOZO

      Petitioner,

vs.

LEOPOLDO CASTILLO BOZO and
GABRIEL CASTOILLO BOZO,

      **Respondents.**

_____/

<u>**DECLARATION AND EXPERT OPINION OF**</u>
<u>**ANDREW C. BERNSTEIN CPA, CFF, CVA**</u>

<u>**Credentials**</u>

1. I, Andrew C. Bernstein CPA, CFF, CVA have been retained by Hogan Lovells US LLP, legal counsel for Juan Jose Castillo Bozo (referred to herein as "Juan Jose" or "Petitioner"), in connection with the matter in United States District Court, Southern District Of Florida, Case No.: 12-CV-24174-Williams, vs. Leopoldo Castillo Bozo (referred to individually herein as "Leopoldo") and Gabriel Castillo Bozo (referred to individual herein as "Gabriel") to form and offer expert opinions related to this matter. Identification of the documents that I rely on is at Exhibit A.

2. I have been a Certified Public Accountant, licensed in the State of Florida, for approximately 32 years.  Since November 2003, I have been a director in the Forensic Accounting & Valuation practice of Berkowitz Pollack Brant, Advisors and

Accountants.  I was granted the designation as Certified in Financial Forensics (CFF) by the Florida Board of Accountancy in the first year the designation was established in Florida.  I am also a Certified Valuation Analyst (CVA), so designated by the National Association of Certified Valuation Analysts.

3. From 1980 through 1990, my experience included auditing, auditing financial statements of banks, tax, business consulting and forensic accounting. From 1990 through 2003, I was a principal/director in the forensic accounting practices at international accounting and consulting firms, including PricewaterhouseCoopers and KPMG.  Since 1990 through the present, the focus of my practice has been Forensic Accounting, including the analysis of accounting, financial, and economic issues in complex business disputes and accounting investigations in a wide range of matters.

4. I have provided expert testimony in state court, federal court, federal bankruptcy court, Delaware Chancery Court, international arbitrations, state and county administrative proceedings and other venues.  I have also served as a member of an ICC arbitral panel (*Hon. Edward Davis* (ret.), Panel Chair); as a court appointed arbitrator (*Judge Thornton*); and, as a court appointed independent forensic accountant (*Judge Gold*).  My experience includes:

5. Accounting investigation of banking and real estate transactions, including international wire transfers, to assist a European bank in recovering over $30 million misappropriated by two non-US citizen family members involved in certain US real estate investments.  The misappropriated $30 million was taken off-shore and eventually re-invested in the US using a scheme to conceal the true beneficial ownership and control by the two family members.  The scheme utilized, among other matters, Florida corporations owned by entities formed in the Bahamas, British Virgin Islands, Panama (generally owned through bearer shares), Liechtenstein and Switzerland, to conceal the true beneficial ownership of assets to the European bank and others. The concealed investments included ownership in residential and

commercial real estate including properties in downtown Miami, Miami Beach, and Bal Harbour, some of which was for personal use.  The two family members, ages 77 and 46, were sentenced to 10 years in federal prison for tax fraud.  This matter included tracing funds transfers among related party bank accounts, including international and domestic wire transfers.

6.  Accounting investigation of a federal bank in connection with an agreed order between the bank and a federal banking regulatory agency, the Office of the Controller of the Currency ("OCC"), in which I reported my findings directly to the OCC.  Matters investigated included finding, tracing, and analyzing hundreds of improper bank transfers and loans among and to bank customer accounts, aggregating in the tens of millions, in a scheme to conceal loans and over drafts to certain related-party entities owned and controlled by non-US citizens residing in Latin America.

7.  Accounting investigation on behalf of the board of directors of a bank that was the US subsidiary of a financial institution in Latin American.  The investigation included tracing and analysis of international wire transfers to and from the US and the domicile county of the parent company bank.

8.  Forensic investigation into bank transactions and the independent auditor's procedures in connection with a 5-year embezzlement scheme by a bank official.  This project involved, among other matters, tracing funds (including wire transfers) in and out of correspondent bank accounts, investment accounts and other accounts.

9.  Accounting investigation of the $1 billion Rothstein Ponzi scheme on behalf of the State Court, 11th Judicial Circuit of Florida (*Judge Streitfield*) appointed receiver, and Federal Bankruptcy Court, Southern District of Florida (*Judge Ray*) appointed Trustee (*Judge Stettin*).  This accounting investigation included tracing and analysis of the movement of hundreds of millions of dollars through numerous bank accounts

and banks, including incoming and outgoing wire transfers, other transfers, funds in from and out to investors, and other transactions.

10. Accounting investigation of the $1 billion Mutual Benefits receivership on behalf of the United States Federal Court, Southern District of Florida, (*Judge Moreno*) appointed receiver, in which the SEC alleged the company was a Ponzi scheme. This accounting investigation included the tracing and analysis of wire transfers and other funds transfers among various accounts and banks.

11. Accounting investigation of a $180 million mortgage lender on behalf of the state-court appointed receiver (*Judge Bailey*).   The matter including investigating transfers, including wires transfers, in connection with the sale of real estate, funding real estate loans, related party transactions, and other matters.

12. Expert testimony in Federal Bankruptcy Court, Southern District of Florida (*Judge Mark*), in connection with the issue of corporate separateness in a matter involving approximately 40 single purpose real estate entities that were owned and controlled by a related party.  The Court agreed with my conclusion and granted a motion for substantive consolidation.

13. Expert testimony in State Court, 11th Judicial Circuit of Florida (*Judge Thomas*), on the issue of corporate separateness and alter ego.  In this matter, the plaintiff, a real estate marketing company, had been awarded a judgment by the court against the defendant, a real estate developer.  The defendant real estate developer argued that the funds the plaintiffs claimed were available to pay the judgment belonged to the defendant's parent corporation.

14. Expert testimony in United States Federal Court, Southern District of Florida (*Judge Ungaro*), in connection with corporate separateness and alter ego, on behalf of a court appointed receiver in an action by the FTC.  The issue was whether certain additional related party entities should be brought into the receivership.

15. My curriculum vitae is included as Exhibit B and a list of cases in which I have given expert testimony in deposition or trial is attached as Exhibit C.   The facts and statements therein are true and correct.

## Opinions

I hold the following opinions to a reasonable degree of professional certainty:

### Opinion re Ownership and Control of Net Proceeds

16. Banesco is correct in its determination that the transfer of funds received by Banesco on July 19, 2013, was the Net Proceeds of the 1451 Brickell sale, and in its determination that 1451 Brickell and BBA are each owned and controlled by Leopoldo and Gabriel. The Net Proceeds were received by Banesco pending their due diligence as to its regulatory compliance requirements[1].   As of this date, 1451 Brickell's funds from the sale of its real estate, remain frozen and in the control of Banesco; they are being held for the benefit of 1451 Brickell pending the outcome of Petitioner's Writs of Garnishment.

---

[1] Including Section 312 of the USA PATRIOT Act, established December 2005, which pertains to, inter alia, correspondent accounts established or maintained for foreign financial institutions and others (replacing the July 2002 interim rule by the Financial Crimes Enforcement Network) re due diligence and enhanced due diligence.

**Opinion re Traceability or the Frozen Funds to the Net Proceeds**

17. The Frozen Funds of $20,970,960 are specifically identifiable to the Net Proceeds of $23,324,698, based on the Lowest Intermediate Balance method of tracing.

|  | Beginning Balance | Deposits | Withdrawals | Ending Balance |
|---|---|---|---|---|
| Friday, July 19, 2013 | $793,430 | $23,324,698 | $0 | $24,118,128 |
|  |  |  |  |  |
| Friday, July 19, 2013 | $24,118,128 | $1,975 | ($504,100) | $23,616,003 |
| Monday, July 22, 2013 | $23,616,003 | $116,607 | ($1,298,411) | $22,434,199 |
| Tuesday, July 23, 2013 | $22,434,199 | $19,900 | $0 | $22,454,099 |
| Wednesday, July 24, 2013 | $22,454,099 | $18,638 | ($1,071,564) | $21,401,173 |
| Thursday, July 25, 2013 | $21,401,173 | $65,316 | ($246,866) | $21,219,623 |
| Friday, July 26, 2013 | $21,219,623 | $8,384 | ($132,638) | $21,095,369 |
| Monday, July 29, 2013 | $21,095,369 | $7,028 | ($131,437) | $20,970,960 |
|  |  | $237,848 | ($3,385,016) |  |

**Opinion re Alter Ego Considerations -- Basis For Analysis**

18. Accounting and financial reporting are focused on presenting the financial position and results of operation of business entities based upon the true economic substance of the underlying transactions.  It is generally accepted that the form of the transaction between related parties may not be relied upon to reflect the economic substance of the transactions.  From the accounting, finance and economic perspective, evaluation of the economic substance of transactions and business relationships among parties includes analysis of totality of the circumstances, including the following considerations:

    a. Ownership:  Unity of beneficial interest and ownership;

    b. Control: Unity of control, such as authority for decision making as to finances, business transactions, and business practices and policies, including control held by individuals who are not listed as employees, officers, or directors.

    c. Co-mingling Cash:  Whether there are frequent transfers of cash among entities, especially without observing corporate formalities, including documenting the purpose and terms of the transactions.

    d. Capitalization:   Whether an entity is a viable business concern or economically  dependence on parent entity or related parties (e.g., lacking

sufficient capital to carry-out its business purpose and relying on cash transfers)

e. Governance: Compliance with corporate formalities, including documentation of shareholder meetings and meetings of directors, re authorization for corporate actions concerning finances, business transactions, and business practices and policies.

f. Financial Separateness: Whether an entity is held out to or considered by creditors (or others) separately or as a member of a group, including:

   i.  inter-party guarantees or collateralization of debt;

   ii.  credit considerations as a group or individual income and assets;

   iii.  Financial or business presentation as a combined group.

g. Management Separateness:  Shared officers, directors, key employees;

h. Physical Separateness: Shared offices or other physical facilities.

i. Other aspects of corporate separateness

**Opinion re 1451 Brickell, Inc.**

19. <u>Alter Ego.</u> The totality of the circumstances demonstrate:  (1) Leopoldo and Gabriel have control over the finances, policy and business practices of 1451 Brickell; (2) 1451 Brickell is dominated by Leopoldo and Gabriel such that 1451 Brickell exists as a mere instrumentality of Leopoldo and Gabriel; and (3) Leopoldo and Gabriel utilized 1451 Brickell to conceal assets and willfully avoid paying their obligation to the Judgment Creditor as follows:

a. Ownership:  Leopoldo and Gabriel are the beneficial owners of 1451 Brickell.  Their form of corporate organization served to conceal such ownership.

b. Control:  Leopoldo and Gabriel are the persons who have ultimate authority for decision making as to finances, business transactions, and business practices, and policies for 1451 Brickell, including the sale of 1451 Brickell's real estate and the attempt to transfer the Net Proceeds out of the US to Aruba to avoid their obligation to the Judgment Creditor.

Leopoldo and Gabriel concealed their control by placing Jorge Hernandez as the sole officer and, director.

c. Co-mingling Cash & Capitalization: 1451 Brickell was under-capitalized such that it was not viable as an independent entity. It relied every month on cash transfers from various parties (including directly from Leopoldo and Gabriel) in order to make its monthly mortgage payment. 1451 Brickell did not observe corporate formalities in connection with these cash transfers, or other matters.

d. Governance: Corporate formalities that would document authorization for decisions as to finances, business transactions, and business practices and policies are absent. The corporate form used to conceal Leopoldo and Gabriel's control of 1451 Brickell's governance.

20. Harm. Since March 2008 to the present, Leopoldo and Gabriel have willfully failed to pay their obligation to the Petitioner of $25 million. In July 2013, Leopoldo and Gabriel completed the sale of the real estate acquired in the name of 1451 Brickell. At that point, Leopoldo and Gabriel, through 1451 Brickell, had within their ownership and control $23.3 million. Rather than using the Net Procceds to pay the final judgment to the Petitioner, Leopoldo and Gabriel took immediate actions, through 1451 Brickell, to remove the Net Proceeds from the US into Aruba through the use of BBA, which they also owned and controlled. The Petitioner, as the Judgment Creditor, has been directly and specifically harmed by Leopoldo and Gabriel's scheme involving use of 1451 Brickell to conceal the Net Proceeds until August 2, 2013 when Petitioner received Banesco's answer to the Writ.

**Opinion re BBA**

21. Alter Ego. The totality of the circumstances demonstrate: (1) Leopoldo and Gabriel have control over the finances, policy, and business practices of BBA, at least with respect to the Net Proceeds; (2) BBA is dominated by Leopoldo and Gabriel such that BBA exists as a mere instrumentality of Leopoldo and Gabriel at least as to the

Net Proceeds; and (3) Leopoldo and Gabriel utilized BBA to conceal assets and willfully avoid paying their obligation to the Judgment Creditor as follows:

    a. Ownership: Leopoldo and Gabriel are the beneficial owners of BBA.

    b. Control: Leopoldo and Gabriel have ultimate authority for decision making as to finances, business transactions, and business practices and policies for BBA, including attempting to participate in Leopoldo and Gabriel's scheme to avoid its obligation to the Judgment Creditor. Leopoldo and Gabriel's control of BBA extends to their ability to place Armitano (the person whose job is taking care of Leopoldo and Gabriel's personal assets) in the position of appearing to be acting on behalf of BBA.

    c. Capitalization: BBA had limited capitalization. Leopoldo and Gabriel had provided substantially all of BBA's capital. However, a material portion of the capital was in escrow and not available to provide BBA with liquidity. In addition, Leopoldo and Gabriel were the major source of funds (deposits) for BBA from the available documents and testimony, BBA has limited operations other than servicing transactions for Leopoldo and Gabriel.

22. <u>Harm</u>. Since March 2008 to the present, Leopoldo and Gabriel have willfully failed to pay their obligation to the Petitioner of $25 million. In July 2013, Leopoldo and Gabriel completed the sale of the real estate acquired in the name of 1451 Brickell. At that point, Leopoldo and Gabriel, through 1451 Brickell, had within their ownership and control $23.3 million. Rather than using the Net Procceds to pay the final judgment to the Petitioner, Leopoldo and Gabriel took immediate actions, through 1451 Brickell and BBA to remove the Net Proceeds from the US into Aruba through the use of BBA. The Petitioner, as the Judgment Creditor, has been directly and specifically harmed by Leopoldo and Gabriel's scheme involving use of 1451 Brickell and BBA to conceal the Net Proceeds until August 2, 2013 when Petitioner received Banesco's answer to the Writ.

## **Factual Basis for Opinions**

The following is the factual basis for my opinions in this case:

Arbitration Award to Writ Of Garnishment

23. The following provides a summary of the events that led to Banesco being served with a Writ of Garnishment.   These facts establish that from March 2008 to the present, Leopoldo and Gabriel have willfully failed to pay any part of their obligation to the Petitioner of $25 million.[2]   This is a material fact which is necessary to keep in mind in considering essentially all actions of Leopoldo and Gabriel since 2008.

24. In March 2008, the Petitioner and Respondents entered into a Stock Purchase Agreement pursuant to which, among other matters, the Petitioner sold and transferred to Leopoldo and Gabriel his ownership interest in various Venezuelan financial and insurance companies.  The Petitioner was to receive a purchase price of $25 million from Leopoldo and Gabriel, who failed to comply with, among other obligations, these payment obligations.[3]

25. An arbitration proceeding was commenced in December 2010, by the Petitioner filing his request for arbitration.  Final arbitration hearings were held in March 2012. The arbitral tribunal rendered its final written arbitral award in November 2012.  The tribunal decided and ordered, among other things, that (i) the Petitioner complied with all his obligations under the Stock Purchase Agreement; (ii) Respondents failed to comply with all of their obligations under such Agreement; (iii) Leopoldo and Gabriel must pay the Petitioner $25 million, the full amount contemplated in the Agreement, plus interest; (iv) Leopoldo and Gabriel's counterclaims were dismissed in their entirety; and (v) payments owed to the Petitioner under the arbitral award were to be paid within thirty days.[4]

---

[2] Petition To Confirm And Enforce Arbitral Award
[3] Petition To Confirm And Enforce Arbitral Award
[4] Petition To Confirm And Enforce Arbitral Award

26. In November 2012, Petitioner filed his Petition To Confirm And Enforce Arbitral Award in the United States District Court for the Southern District of Florida.  On May 23, 2013, the Court, among other matters, granted the Petitioner's Petition.[5]  A Final Judgment was ordered by the Court on June 13, 2013.[6]

27. On July 26, 2013, the Clerk Of Court signed the Writ Of Garnishment as to garnishee Banesco, requiring it to, in effect and among other matters, state the amount of assets of Leopoldo and Gabriel held in the possession or control of Banesco.[7]

Banesco re Writ:  Answer & Actions

28. Banesco USA ("Banesco") reported in its Answer To Writ Of Garnishment, dated August 2, 2013, that, among other matters, at the time of service of the Writ, Banesco was or may have been indebted to Leopoldo Castillo Bozo in connection with 19 bank accounts at Banesco "on which Leopoldo has signatory authority and other indicia of ownership or control."  Included among the 19 bank accounts at Banesco was account #1715, in the name of BBA Bank, N.V. ("BBA") in the amount of $20,970,960.94 (the balance as of July 29, 2013, referred to herein as the "Frozen Funds")[8].  Banesco stated in its Answer To Writ Of Garnishment that it "can trace [the Frozen Funds] to a recent transaction involving the entity 1451 Brickell, Inc., which [Banesco] in good faith believes is or may be the property of the Defendants Leopoldo and Gabriel Castillo Bozo."[9]  My analysis is in agreement with this statement.

Banesco re BBA

29. Banesco's knowledge as to BBA was that Leopoldo and Gabriel had beneficial ownership and control based on documents and information provided by BBA to Banesco:

---

[5] Petition To Confirm And Enforce Arbitral Award
[6] Final Judgment
[7] Writ Of Garnishment (7/26/13)
[8] BAN 0025
[9] Answer To Writ Of Garnishment; Larrea Deposition Vol. 1, p.68-70, 77-82, Vol. II, p. 30-33, 65

30. Based on the information that Banesco had in its records, there was sufficient indicia of control by Leopoldo and Gabriel as to BBA and 1451 Brickell.[10]

31. Corporacion Castillo Bertran Aruba ("CBC") owns 4,500 shares (90%) of BBA; BanValor Banco Comercial owns 500 shares (10%). Leopoldo and Gabriel are managing directors of CBC.[11]

32. CBC was owned by Leopoldo – 62.22%; Gabriel – 37.22%; and Juan Jose 0.56% as of March 8, 2013 (updated from October 2011).[12]

33. Leopoldo is an "authorized signor" and authorized to approve wire transfers on BBA's account #1715 at Banesco, although he is not listed as an officer or employee.[13] Leopoldo is Chairman of the Supervisory Board of BBA. Banesco appropriately considered it unusual for Leopoldo, as a non-officer, to have signatory control (an indication of his control over BBA).[14]  My analysis is in agreement with this statement.

34. Pursuant to the parties' correspondent bank agreement, BBA agreed to comply with, among other matters, the USA PATRIOT Act, Bank Secrecy Act, including verifying names of the owners of BBA and providing updated information.  The information provided by BBA to Banesco was in connection with BBA's compliance with among other matters, the USA PATRIOT Act, and Bank Secrecy Act, including verifying names of the owners of BBA and providing updated information as needed.[15]

35. At December 31, 2010 and 2011, BBA's contributed capital was $10 million and its total assets were approximately $12.8 million and $14.7 million, respectively.  Assets

---

[10] Evidentiary Hearing Transcript, By Ms. Long, Shutts & Bowen, for Banesco, p. 66-67
[11] BAN 0081-100, BAN 0202
[12] BAN 0217-220; BAN 0224-227; BAN 0283-284; BAN 0436-437; BAN 0283-284
[13] BAN 0067
[14] BAN 0148-151; BAN 0152, 0228; Larrea Deposition Vol. 1, p. 77-80.
[15] BAN 0153-168

and capital included $7.8 million that was deposited in an escrow account and was not available to be used as collateral against any other transaction. Total customer deposits were approximately $3.2 million at December 31, 2010.  Leopoldo was identified as one of BBA's primary source of funds /deposits.  BBA has not been profitable since inception (2008); cumulative losses were approximately $1.1 million through 2011.[16]

|  | **BBA Bank NV** | |
| --- | --- | --- |
|  | **2010** | **2011** |
| Restricted Cash | $7.8 | $7.8 |
| Other Assets | $5.0 | $6.9 |
| Total Assets | $12.8 | $14.7 |
|  |  |  |
| Customer Deposits | $3.2 | $5.8 |
| Other Liabilities | $0.7 |  |
| Equity | $8.9 | $8.9 |
| Total Liabilities & Equity | $12.8 | $14.7 |

36. BBA represented to Banesco, in 2012, as to account #1715, that BBA anticipated the aggregate monthly amount of incoming wire transfers into the account would be approximately $5 million, outgoing wires would be approximately $5 million, and that the average balance would be approximately $200,000.[17]  Based on this information, Banesco established a customer profile within its "live" monitoring system (i.e., monitors transactions as they are recorded) as an element of its regulatory compliance program.[18]  Transactions that were outside the established profile would automatically be identified and subjected to greater scrutiny.  From May 1, 2013 through July 18, 2013, the average balance in account #1715 was approximately $1.3 million (with a range from $439,000 to $2,284,000); the number of deposits of $1 million or more: 2 deposits (one for $1,000,000 and the other $1,014,586). The aggregate monthly deposits and withdrawals were $3.6 million and $2.7 million,

---

[16] BAN 0202-206;  BAN0173-181; BAN 0208-210; BAN 0283
[17] BAN 0205; BAN 0283
[18] Larrea Deposition, Vol. 1, p. 47

respectively, in June 2013; and $5.2 million and $5.7 million, respectively, in May 2013.[19]

Banesco re 1451 Brickell

37. Banesco's knowledge as to 1451 Brickell was that Leopoldo and Gabriel had beneficial ownership and control, based on the documents and information provided by 1451 Brickell to Banesco:

38. Based on the information that Banesco had in its records, there was sufficient indicia of control by Leopoldo and Gabriel as to BBA and 1451 Brickell.[20]

39. 1451 Brickell International, Inc., a Panamanian corporation, is the 100% owner of 1451 Brickell.  Leopoldo and Gabriel are the beneficial owners of 1451 Brickell International.[21]

40. Leopoldo is an "authorized signor" and authorized to approve wire transfers on 1451 Brickell's bank account at Banesco.[22]

Banesco re Leopoldo and Gabriel

41. Banesco's knowledge as to business dealings of Leopoldo and Gabriel, according to documents and information provided to Banesco:

42. Banesco's knowledge of Leopoldo and Gabriel included that they grew up in the insurance and banking industry and followed in the footsteps of their father. Leopoldo and Gabriel are or were the majority owners of Grupo BanValor in Venezuela which holds a number of companies.  Their holdings in Venezuela were focused on banking and insurance.  The Venezuelan government appropriated or closed the following companies in late 2010 and 2011:  Seguros Ban Valor, CA

---

[19] BAN 0066, 044, 024; BAN 0004-066
[20] Evidentiary Hearing Transcript, By Ms. Long, Shutts & Bowen, for Banesco, p. 66-67
[21] BAN 0356-360; BAN 0405-408;
[22] BAN 0354

(among the largest insurance companies in Venezuela), BanValor Banco Commercial, CA, BanValor Casa de Bolsa, CA, Inversiones Intervalores, CA, and BanValor Viajes y Turismo. For most of these entities, Leopoldo served as Executive President and Gabriel served as Executive Vice President. [23]

43. Banesco's documents show Leopoldo had beneficial ownership and control over 15 separate businesses (Florida corporations) that held accounts at Banesco (including 1451 Brickell). In general, these corporations were single purpose entities formed to own and/or manage certain real estate. With one exception, all of the Florida corporations were 100% owned by a respective off-shore entity domiciled in either Panama (ten entities) or the British Virgin Islands (four entities). Leopoldo was the beneficial owner of each of the 14 off-shore parent companies and was the direct beneficial owner of the one Florida entity that did not have a corporate parent. Five of the ten Panamanian entities were owned by Leopoldo in the form of bearer shares. For each of the 15 Florida corporations listed below (the "Listed Entities"): the sole officer and/or director were Jorge Hernandez; Leopoldo was not a listed officer, director or employee; Leopoldo was an "authorized signor" and had wire transfer authority on each of the entities' respective bank accounts at Banesco. Bank opening documents indicate that funds from related parties were used to open certain accounts and future related party transfers were expected (as to entities in which Leopoldo was the beneficial owner and controlled).[24]

| Acct # | Entity | Parent Domicile | Bearer Shares |
|--------|--------|-----------------|---------------|
| 1039 | Castle Business, Inc. | Panama | Yes |
| 6334 | Jade Ocean A-2308, Inc. | Panama | Yes |
| 3014 | 1200 Castel 100-A, Inc. | Panama | Yes |
| 4295 | Three Tequesta Point 3305, Inc. | Panama | Yes |
| 8985 | Castellum, Inc. (1) | Panama | Yes |
| 2580 | Jade Castle 4503, Inc. | Panama | |
| 3869 | Castle Investors, Inc. | Panama | |
| 4105 | Castel 1000, Inc. | Panama | |
| 4287 | Two Tequesta Point, Inc. | Panama | |

---

[23] BAN 0779-801; BAN 0869-876; BAN 0191-192
[24] BAN 0502-1661

| 3349 | 1451 Brickell, Inc. | Panama |
| 2705 | Flamingo Group Holdings, Corp | BVI |
| 2937 | Sandbox Invest Florida, Inc. | BVI |
| 2960 | Solitaire Group Florida, Inc. | BVI |
| 8853 | Ambon Business, Inc. (1) | BVI |
| 8993 | Castle 700, Inc. | NA - Direct Ownership |

(1) - not included in Writ Answer

Banesco re: Net Proceeds & Freezing 1451 Brickell's Net Proceeds

44. On or about July 17, 2013, Banesco received funds transfer instructions (via a global international bank service provider referred to as SWIFT[25]) pertaining to $23,324,698 that belonged to 1451 Brickell. Banesco detected this large and "unusual transaction".[26] Banesco appropriately considered the transfer to be large and unusual based on factors including: prior to the transfer, BBA's account at Banesco, account #1715, had a balance of $793,430 on July 18, 2013, an amount that was within a normal range for that account (over the past approximately 75 days, the two largest deposits were only about $1 million each and the average balance was only about $1.3 million); the amount of the Net Proceeds, $23,324,698.59, was most likely greater than the total assets of BBA (it was also an amount that was very large for Banesco – over 3% of its customer deposits).[27]

45. Banesco, with knowledge that Leopoldo had ownership and control (including signatory and transfer authority) as to both BBA and 1451 Brickell (as described above) Banesco endeavored to obtain additional information, including the source of the Net Proceeds and other matters in connection with its regulatory compliance.

46. Banesco learned that during April 2013, 1451 Brickell entered into an agreement to sell certain real estate for $25 million; the transaction closed on July 16, 2013; and the net proceeds from the sale to 1451 Brickell were $23,324,698.59.[28]

---

[25] Use of SWIFT was necessary because at least one of the banks receiving information was not a US bank.
[26] Larrea Deposition, Vol. 1, p. 83-87.
[27] http://www.usbanklocations.com/banesco-usa-trend.shtml?c=dep
[28] BAN 0313-330, BAN 0309-312

47. After Banesco was served with the Writ, Banesco concluded that: (a) the transfer of $23,324,698.59, comprised 1451 Brickell's Net Proceeds from the sale of its real estate and was subject to the writ because Leopoldo and Gabriel controlled and were the beneficial owners of 1451 Brickell, a single purpose entity established to hold the subject real estate; and (b) the balance remaining of the transfer, $20,970,960, was specifically identifiable (i.e., traceable) to the Net Proceeds. Banesco also considered that Leopoldo and Gabriel beneficially owned and controlled BBA.

48. The following illustrates how the balance of $20,970,960 was traceable to the amount of 1451 Brickell's Net Proceeds, of $23,324,698, using generally accepted tracing methodology. The data below reflects the accounting entries that were recorded as to the Net Proceeds and the accounting entries made to the customer account for BBA, account #1715.

| | Beginning Balance | Deposits | Withdrawals | Ending Balance |
|---|---|---|---|---|
| Friday, July 19, 2013 | $793,430 | $23,324,698 | $0 | $24,118,128 |
| | | | | |
| Friday, July 19, 2013 | $24,118,128 | $1,975 | ($504,100) | $23,616,003 |
| Monday, July 22, 2013 | $23,616,003 | $116,607 | ($1,298,411) | $22,434,199 |
| Tuesday, July 23, 2013 | $22,434,199 | $19,900 | $0 | $22,454,099 |
| Wednesday, July 24, 2013 | $22,454,099 | $18,638 | ($1,071,564) | $21,401,173 |
| Thursday, July 25, 2013 | $21,401,173 | $65,316 | ($246,866) | $21,219,623 |
| Friday, July 26, 2013 | $21,219,623 | $8,384 | ($132,638) | $21,095,369 |
| Monday, July 29, 2013 | $21,095,369 | $7,028 | ($131,437) | $20,970,960 |
| | | $237,848 | ($3,385,016) | |

Jorge Hernandez re 1451 Brickell, Inc.

49. As stated above, for each of the 15 Listed Entities, including 1451 Brickell, the sole officer and/or director was Jorge Hernandez ("Hernandez"). The following summarizes facts, based on documents and/or testimony of Hernandez:

50. Hernandez has known Leopoldo for approximately 40 years in a friendship that Hernandez described as "like brothers."   Hernandez worked for Leopoldo in Venezuela before Hernandez came to the US.[29]

51. Hernandez is an employee of Castle Investors.  Castle Investors, Inc. is "a company that coordinates the investments of Messrs. Leopoldo and Gabriel Castillo Bozo, in the state of Florida, United States of America," including "managing certain personal operations for Messrs. Leopoldo and Gabriel Castillo Bozo."[30]   Hernandez has worked for approximately 9 years at Castle Invedstors, since the company was formed.  He is the president and director; there are no other directors.  In connection with his being hired at Castle Investors, Hernandez met solely with Leopoldo.  For the past nine years, the only person from whom Hernandez has received instructions, authorization and approval for financial transactions and other business dealings is Leopoldo.   According to Hernandez, he does not know whether Leopoldo has any ownership interest in Castle Investor's Panamanian parent company, Jordani.  However, Hernandez signed the Banesco "Know Your Customer /Enhanced Due Diligence" document disclosing to Banesco that Castle Investors is owned by Jordani, a Panamanian entity in which Leopoldo is the beneficial owner; and Hernandez and Leopoldo are authorized signors on that account.[31]

52. Hernandez is also the president and sole director of 1451 Brickell, which was formed to purchase certain real estate for $22 million.  The purchase was financed by a $12 million mortgage from the seller and a transfer of funds to or on behalf of 1451 Brickell of $10 million – however, Hernandez does not recall the source of the funds.[32]  From September 2008 to June 2013, 1451 Brickell received funds to pay its

---

[29] Hernandez Deposition, p. 57-60
[30] ICDR Case No.: 50 148 T 00802 10, Witness Statement of Oswaldo Armitano
[31] Hernandez Deposition, p. 5-14; 34-39; 61, 67, BAN 00514-518
[32] Hernandez Deposition, p. 17-22

monthly mortgage payment of approximately $262,000 to the seller/mortgagee by transfer from the following:[33]

| | |
|---|---|
| Leopoldo /Gabriel Castillo | $2,625,819 |
| ADLI | $3,096,787 |
| BanValor | $900,000 |
| Corporacion Castillo Bertran | $619,000 |
| Finance Ltd | $1,125,000 |
| Seguros Banvalor | $500,000 |
| Shari Finance SA [1451B#2425] | $1,354,000 |
| | $10,220,606 |

53. The fact that 1451 Brickell needed over $20 million from Leopoldo and Gabriel and other parties in order for it to acquire real estate and pay its mortgage demonstrates that 1451 Brickell and its parent, 1451 Brickell International, shows it was severely undercapitalized.

54. Hernandez is also the president and sole director of the 15 Listed Entities in which Leopoldo controls and is the beneficial owner through an off-shore parent entity (except in one case). These 15 Listed Entities also have the same business address and the same registered agent.

55. Corporate formalities were not observed by 1451 Brickell including:

   a. Cash was co-mingled (i.e., the $10,220,606 that 1451 Brickell from Leopoldo and Gabriel and others to pay its mortgage)
   b. Cash transfers were without documentation as to purpose, terms, obligation to repay, or other matters;
   c. No meetings with the shareholder;

---

[33] 1451B #00246-249; 02410-02499; 24100-24319; 243110-243199; 2431100-2431179; Hernandez Deposition p. 90 et seq.

     d. Instructions, approvals, and authorization for finances and business transactions were all by Leopoldo who is not listed as an employee, officer or director of 1451 Brickell.[34]

56. Since 1451 Brickell was formed in 2008, the only person from whom Hernandez has received instructions, authorization and approval for financial transactions and other business dealings is Leopoldo.   According to Hernandez, he does not know whether Leopoldo has any ownership interest in 1451 Brickell.  However, Hernandez signed the Banesco "Know Your Customer /Enhanced Due Diligence" document disclosing to Banesco that 1451 Brickell is owned by 1451 Brickell International, a Panamanian entity in which Leopoldo is the beneficial owner; and Hernandez and Leopoldo are authorized signors on that account.[35]

57. The amount of time and attention required of Hernandez in connection with his responsibilities for 1451 Brickell and the 15 Listed Entities in which he is named president and director (but is not an employee) is minimal; "it's not a lot of work." Hernandez receives no compensation from 1451 Brickell.[36]

58. Leopoldo makes all decisions and provides all instruction and authorization for 1451 Brickell's operations, including:

     a. Instructions to the closing agent for the Net Proceeds to be sent to Aruba;[37]

     b. Negotiations to sell the 1451 Brickell real estate including accepting or declining offers and authorizing transactions;[38] and,

     c. Payments to Hernandez's son's school and for his wife's credit cards.[39]

---

[34] Hernandez Deposition, p. 22, , 34, 39, 111, 123, 132-135; 1451BI 0000071-245
[35] Hernandez Deposition, p. 15-17, 34-36, 39, 41, 67, 78-81, 83, 107-111, 132-135; BAN 0356-360
[36] Hernandez Deposition, p. 130, 158
[37] Hernandez Deposition p. 77-79
[38] Hernandez Deposition p. 80-82; 107-111.
[39] Hernandez Deposition p. 132-135

Oswaldo Armitano

59. Oswlado Armitano has known Leopoldo and Gabriel since 2003.  He worked for them at BanValor Banco Commercial.  Armitano also served as the General Manager of BBA (2008-2010)[40] and as a member of the Oversight Board.  In connection with his employment at BBA, "reports were made to Leopoldo and Gabriel that were the two people who were at the head of the bank, when [he] came into the institution, in that position [Manager of Special Business]."[41] Armitano currently serves as a "consultant" for BBA.  He has no contract and receives no compensation for his consulting, "BBA pays only [his] expenses."  Armitano has maintained his email address since 2008.[42]

60. As of at least March 2012, he was the Director of Operations of Castle Investors, Inc., (where Jorge Hernandez is employed).  Castle Investors, Inc. is "a company that coordinates the investments of Messrs. Leopoldo and Gabriel Castillo Bozo, the state of Florida, United States of America.  Among other functions, [he is] responsible for managing certain personal operations for Messrs. Leopoldo and Gabriel Castillo Bozo."  Armitano was involved in the formation of BBA bank, including selecting the team that assisted him with forming BBA.[43]

61. Armitano had significant involvement between July 17, 2013 and July 19, 2013, in ascertaining the status of the wire transfer of the Net Proceeds, including providing information about what transactions were recorded for BBA at Banesco and for 1451 Brickell at BBA.  Armitano described his responsibilities as "managing certain personal operations for Messrs. Leopoldo and Gabriel Castillo Bozo."  Armitano's significant involvement re the status of the wire transfer included his sending emails to the closing agent and others from his email address at BBA (i.e.,

---

[40] Armitano Deposition, p. 8
[41] ICDR Case No.: 50 148 T 00802 10, Testimony of Oswaldo Armitano, p. 385
[42] Armitano Deposition, p. 8-9
[43] ICDR Case No.: 50 148 T 00802 10, Witness Statement of Oswaldo Armitano

"oarmitano@bbabanknv.com"), although he was not listed as an officer or employee of BBA. [44]

\* \* \*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 23th day of September, 2013 at Miami, Florida.

By: _____
Andrew C. Bernstein

_____

[44] ARNSTEIN 000631-1447

# EXHIBIT A

# EXHIBIT A.  DOCUMENTS CONSIDERED

US District Court, SD Florida, 12-CV-24174-Williams

1. Final Judgment
2. Order Confirming And Enforcing International Arbitration Award
3. Order re Protective Order
4. Writ Of Garnishment – Banesco (7/26/13)
5. Writ Of Garnishment – Banesco (9/19/13)
6. Banesco USA's Response To BBA Bank, NV's Expedited Motion For Reconsideration of Omnibus Order
7. Evidentiary Hearing Transcript, 8/18/10

Miami-Dade County Public Records

8. 1451 Brickell, Inc., Mortgage And Security Agreement, 11/3/08
9. 1451 Brickell, Inc., Special Warranty Deed, 11/3/08

AAA, International Center For Dispute Resolution, Case No.:50 148 T 00802 10, Juan Jose Castillo et al v. Leopoldo Castillo Bozo et al

10. Witness Statement Of Oswaldo Armitano
11. Testimony Excerpts, Non-certified translation, p.385, Lines 1-10; p. 390 Lines 3-19, p.391, Lines 3-11.

BANESCO USA

12. Answer To Writ
13. Answer To Second Writ
14. BAN 0001 to 1661
    a. Translated Documents
    b. BAN 0423, 439, 441, 436

1451 Brickell, Inc.

15. 1451B 000024316-24645
16. 1451B 10000246-249;
17. 1451B 100002410-02499;
18. 1451B 1000024100-24319;
19. 1451B 10000243110-243199;
20. 1451B 100002431100-2431179;
21. 1451BI 0000001-245
22. 1451B 000024316-24991

Oswaldo Armitano

23. OA 0001-111

Castle Investors, Inc.

24. CASTLEINVEST 0000001-121

Arnstein & Lehr
25. ARNSTEIN 000001-1621
26. AL-000001-67


BBA
27. Declaration Of Alvin Paris
28. Declaration Of Natascha Davelaar-Jansen
29. Affidavit Of Stuart Greenberg


LYON KB, INC.
30. LYON KB, INC.'S OBJECTIONS AND RESPONSES
31. LYON KB-000001-72

ADWAR
32. RENEE ADWAR PA,S FIRST SUPPLEMENTAL RESPONSE
33. ADWAR-0001-817

DEPOSITIONS & EXHIBITS
34. Jorge Hernandez, 9/11/13
35. Stuart Greenberg, 8/14/13
36. Ernesto Larrea, 8/14/13, 8/15/13
37. Oswaldo Armitano, 9/10/13
38. Renee Adwar, 9/17/13

OTHER
39. Sunbiz.org data re Florida entities in which Jorge Hernandez is an Officer or Director

# EXHIBIT B



**Andrew C. Bernstein, CPA, CFF, CVA**
**Director of Forensic and Business Valuation Services**

Andrew Bernstein has more than 30 years of experience assisting legal counsel and their clients with economic damages and business issues in complex commercial disputes in a wide range of matters and a wide range of industries.  Mr. Bernstein has also led accounting investigations involving governmental entities, shareholder actions, internal corporate investigations, and other services.

Mr. Bernstein has provided expert testimony on economic damages, business valuation, and other matters in Federal District Court, Federal Bankruptcy Court, State Court, Delaware Chancery Court, International Arbitration, Florida Administrative Court, Miami-Dade County administrative proceedings and courts in Latin America and the Caribbean.

A list of cases in which Mr. Bernstein has provided testimony in deposition, hearing or trial is attached.

**Employment:**

Berkowitz Pollack Brant – November 2003 to present

KPMG – November 2001 to October 2003

PricewaterhouseCoopers – October 1995 – October 2001

Peterson Consulting – March 1992 – October 1995

Arthur Andersen – October 1990 to March 1992

Kaufman Rossin – July 1980 to September 1990

**Certifications:**

Certified Public Accountant

Certified in Financial Forensics

Certified Valuation Analyst

# EXHIBIT C

## Andrew C. Bernstein CPA /CFF, CVA
### Expert Testimony Experience
### Since January 2008

| Date / Testimony | Case Style (Client Indicated) | Venue | Subject of Expert Testimony |
|---|---|---|---|
| Hearing Testimony August 2013 | Jose Wolf v/. Verizon Wireless Personal Communications | Circuit Court, Miami-Dade County | Economic Damages and Business Valuation Issues |
| Trial Testimony & Deposition Testimony June 2013 | Medytox Institute of Laboratory Medicine v. Trident Laboratories | Circuit Court, Broward County | Economic Damages |
| Hearing Testimony, February 2013 | Safe Wrap v. Miami-Dade County | Administrative Hearing | Financial Basis for Bid Protest |
| Trial Testimony, February 2013 | MIA Resorts, Inc. v. Homestead Speedway, et al. | Circuit Court, Miami-Dade County | Economic Damages |
| Arbitration Testimony, September 2012 | Confidential | ICC Arbitration | Generally Accepted Accounting Principles and Financial Reporting |
| Deposition Testimony, August 2012 | Republic or Ecuador, re: Filanbanco, S.A., et al. v. Roberto Isaias, et al. | Circuit Courts, Miami-Dade County | Valuation |
| Hearing Testimony August 2012 | International Airport Management, Inc. v. Miami-Dade County | Administrative Hearing | Financial Bases for Bid Protest |
| Trial Testimony, June 2012 | Platypus Wear, Inc. Platypus Wear, Incorporated, PW Industries, Inc. and Alexandra Ponce De Leon v. Horizonte Fabricacao Distribuicao Importacao E Exportacao Ltda., aka Horizonte Ltda. Fernando Cabas, Jr. and Roberto Ramos | United States District Court of Southern District of Florida | Economic Damages |
| Deposition Testimony, August 2011 | Robert K. Blake, Jr. and Blake Development Corporation, v. James F. Ellis, Thomas M. Bluth, and Ellis Diversified, Inc. | Circuit Court, Broward County, Florida | Economic Damages |

Page 1 of 3

## Andrew C. Bernstein CPA /CFF, CVA
## Expert Testimony Experience
## Since January 2008

| Date / Testimony | Case Style (Client Indicated) | Venue | Subject of Expert Testimony |
|---|---|---|---|
| Trial Testimony, October 2011, Deposition Testimony, May 2011 | Merco Group at Aventura Landings I, Inc., Merco Group at Aventura Landings II, Inc., and Merco Group at Aventura Landings III, Inc., v. Tampa Electric Company, d/b/a Teco Peoples Gas v. Continental Holdings Inc. | Circuit Court, Miami-Dade County, Florida | Economic Damages |
| Deposition Testimony, October 2010 | Central Florida Regional Hospital, Inc. et al v. Radiation Oncology Consultants, P.A. | Circuit Court, Seminole County, Florida | Economic Damages |
| Trial Testimony, March 2010, Deposition Testimony, September 2007, October 2008 | Florida Transportation Services, Inc.  v. Miami-Dade County | United States District Court, Southern District of Florida | Economic Damages |
| Trial Testimony, October 2009, Deposition Testimony, September 2007 | Global Horizons, Inc. v. Del Monte Fresh Produce | United States District Court, Southern District of Florida | Economic Damages |
| Deposition Testimony, August 2009 | Schack v. UM Jackson | Circuit Court, Miami-Dade County, Florida | Economic Damages |
| Deposition Testimony, July 2009 | Fortune Development Sales Corp. v. Brickell on the River | Circuit Court, Miami-Dade County, Florida | Economic Damages |
| Deposition Testimony, May 2009 | Puig Inc. Bankruptcy in re: opposition to Creditors Committee by Ocean Bank | Federal Bankruptcy Court, Southern District of Florida | Corporate Identity / Related Party Transactions |
| Trial Testimony, April 2009 | Fortune Development Sales Corp. v. Wavestone Properties, LLC | Circuit Court, Miami-Dade County, Florida | Corporate Identity / Related Party Transactions |
| Trial Testimony, April 2009 | SEC v. John Utsick et al | United States District Court, Southern District of Florida | Reconstruction of Accounting / Disgorgement |
| Deposition Testimony, December 2008 | Net Results Inc. v. Del Monte Fresh Produce | Circuit Court, Miami-Dade County, Florida | Economic Damages |

Page 2 of 3

## Andrew C. Bernstein CPA /CFF, CVA
### Expert Testimony Experience
### Since January 2008

| Date / Testimony | Case Style (Client Indicated) | Venue | Subject of Expert Testimony |
|---|---|---|---|
| Deposition Testimony, March 2008 | South Florida Resource Defense Conservation Counsel v. Miami-Dade County | Circuit Court, Miami-Dade County, Florida | Economic Damages |
| Deposition Testimony, February 2008 | Hometown Bagel Inc. et al v. Pepperidge Farms | United States District Court, Southern District of Florida | Economic Damages |

Page 3 of 3